[Crim. No. 5313.   Second Dist., Div. Three.   May 11, 1955.]

THE PEOPLE, Respondent, v. PERRY L. DUNNAVANT,
Appellant.

Robert Wanamaker for Appellant.

Edmund G. Brown, Attorney General, Clarence A. Linn, Assistant Attorney General, and Victor Griffith, Deputy Attorney General, for Respondent.

SHINN, P. J.—Defendant Perry L. Dunnavant was charged by information with two offenses of grand theft, namely, the theft of $825 and the sum of $296 in money, the property of Paradise Pools, a corporation.  In a jury trial he was convicted of the theft of $296 under Count II; the jury disagreed as to Count I and the same was dismissed on motion.  Defendant was sentenced to six months in the county jail and he appeals.

In the early part of April 1953, defendant Dunnavant, Lee Paul Haight and Richard Pritchard formed a partnership to engage in the business of installing swimming pools. Defendant was to be manager of the business.  Each party was to draw $100 per month and was to receive in addition one-third of the profits of the business.  Haight was to advance $5,000 which was to be repaid before any profits were divided.  He opened a bank account in his own name by a deposit of $2,962 and he alone was authorized to draw

checks on the account. Admittedly this money was advanced to the partnership for use in the business. Checks were drawn on the account and on April 29, 1953, the balance had been reduced to $2,736.84. Between April 17, 1953, and July 1, 1953, the operations showed a net profit of $4,817.30 and the obligation to Haight had been reduced to $2,016.23. Haight had followed a practice of signing checks in blank which were filled in and used in the business as needed. A Miss Hammack kept the books and records of the business. August 3, defendant procured a check from Miss Hammack for $825 and with it procured a cashier's check for $818. He told Miss Hammack that he intended to use the amount to pay off a mortgage on his home. August 6 Miss Hammack made out a check payable to George Myers for $296 in payment for work done on a swimming pool which defendant was having constructed at his home. Defendant testified that he had Haight's permission to withdraw the $825, which Haight denied. The disagreement of the jury with respect to Count I which involved the $825 check would indicate that at least some of the jurors were of the belief that Haight had authorized defendant to withdraw and use that sum. It is conceded that the jury was instructed to the effect that if the sums involved in the charges were money of the partnership defendant's use thereof would not have amounted to theft. Upon the other hand, if it was found that the money belonged to the corporation there was ample evidence to sustain the charges with respect to both checks since Haight had testified that he did not authorize the withdrawal of either sum. The evidence as to the ownership of the funds was subject to different inferences. It is not questioned that a partnership existed in the beginning and the sum first deposited in the account by Haight had been loaned and belonged to the partnership. He had deposited the money subject to withdrawal upon his own checks. April 29, pursuant to previous arrangement, the partners caused to be filed articles of incorporation of Paradise Pools, Inc. On the same date Haight signed a new bank signature card under the name "Paradise Pools, Inc." with himself as the only person authorized to sign checks. Thereafter business income was deposited in the account to the extent of $67,000. The operating expenses of the business had been paid from the account.

The People contended at the trial that the bank account was transferred to the corporation by means of the signature card signed by Haight on April 29. In support of that con-

tention the People point to evidence that there was an understanding among the partners shortly after the formation of the partnership that the business would be operated through a corporation, and they contend further that upon the organization of the corporation by the partnership, title to the assets of the partnership automatically passed to the corporation. They say further that the corporation did engage in business under its corporate name and that from the time its articles were filed it enjoyed corporate existence. Defendant contended, as we say, that the corporation never did supplant the partnership and further that his withdrawals from the business were made in good faith and in anticipation that in any event the same would be covered by his share of the profits. Although there was a disagreement of the jury as to the first count, the verdict on the second count amounted to a rejection of the contentions of the defendant. The question of the ownership of the funds was a vital one. It affected not only the defendant's claim of his right to use the funds but also his claim that he acted in good faith in withdrawing funds which he expected would be charged to his account. As previously stated, it was the understanding that defendant would be the manager of the business, leaving Haight free to conduct a separate business in which he was then engaged.

In support of his claim that the partnership funds were never transferred to the corporation and that the corporation did not function as such defendant calls attention to the following facts. The corporation did not on or before April 29 authorize Haight to open a bank account in its name; on May 27 a resolution was adopted authorizing the opening of a bank account upon which checks could be drawn signed by Haight and the defendant unless and until other authorization was given. Copy of this resolution was not furnished to the bank. May 29 application was made to the Division of Corporations for a permit to issue 200 shares of stock to Haight and defendant, or either or both of them, at par for cash. Haight signed the application as president and defendant signed as secretary-treasurer. The application read in part "Applicant at present has no assets or liabilities other than organization expenses and has conducted no business; therefore, no financial statement can be prepared or submitted at this time." The corporation was not licensed as a contractor until August 17. The associates had been doing business under the name of Paradise Pools through an employee,

Herbert J. Meier who was a licensed contractor. This being illegal, the company was cited for violation of law and business thereafter was conducted under the name of Paradise Pools but under Meier's license. Apparently there had been some use of the name Paradise Pools, Inc., in the conduct of the business. Sometime prior to August defendant commenced construction of a swimming pool at his home. Office personnel had knowledge of this but Haight did not. Meier worked on the pool, applying concrete and billed the company for $296 for his work. Defendant testified that Miss Hammack had set up a cost sheet for the construction of his swimming pool to have entered thereon all items of cost. This cost sheet was not produced at the trial. Haight learned of the construction work on the swimming pool about September 10 and at that time purported to discharge the defendant. The corporation brought a civil action against defendant, alleging an indebtedness in the sum of $1,471, but upon learning that a judgment might not be collectible dismissed the action, which released an attachment that had been issued. In October Haight made a purported sale of the business to one Jack Arnold for $3,962. To the time defendant's connection with the business terminated, some 35 swimming pool constructions had been undertaken upon which some $67,000 had been received. Considerable detail was in evidence as to these business transactions but the same would add nothing to the facts which we have related.

We think it is clear from the facts we have stated that the question of defendant's guilt was not an easy one for the jury to decide. The disagreement as to Count I indicates as much. It would not have been unreasonable for the jury to conclude that the corporation never functioned as such and never acquired title to the bank account. Or the jury could reasonably have determined that if in its embryo stages the corporation did function without the issuance of any stock, and incidentally in violation of the state licensing law, it did so as a mere agency of the partnership. However, we are not prepared to say that its implied findings of ownership of the funds by the corporation was wholly without support in the evidence.

We now come to the point toward which we have been progressing. The court gave an instruction reading as follows: "In the case of certain crimes it is necessary that in addition to the intended act which characterizes the offense,

the act must be accompanied by a specific or particular intent without which such a crime may not be committed. Thus in the crime of *Grand Theft,* a necessary element is the existence in the mind of the perpetrator of the specific intent to *permanently deprive the owner (to wit) the corporation of the property described in the information,* and unless such intent so exists that crime is not committed." The instruction as prepared contained a blank space in which the court wrote the words "permanently deprive the owner (to wit) the corporation of the property described in the information." ▮ This characterization of the corporation as the owner of the property went to the very heart of the case. Defendant says that it amounted to a statement that the corporation was the owner of the property and that it would have been so understood by the jury. We cannot disagree with this contention. There was no instruction that in order to find the defendant guilty it would be necessary to determine beyond a reasonable doubt that the money belonged to the corporation and not the partnership. According to the dictionaries "to wit" means "that is to say; namely; scilicet;-used esp. in legal language, to call attention to a more particular specification of what has preceded." We think the effect of thus naming the corporation as the owner of the property was to substantially remove from the consideration of the jury the only disputed issue in the case, namely, whether the property belonged to the corporation or the partnership. The evidence that the corporation was represented to the commissioner of corporations to have no assets or liabilities and that it had not engaged in business; the fact that it was not licensed as a contractor until after the check transactions in question; the fact that there was no plan for financing the corporation nor any plan under which the interests of the partners would differ from those interests in the partnership, indicated that the corporation was only a medium or agency through which the partnership would operate. This was not a conclusion which the jury was required to reach but it would have been a reasonable conclusion under the evidence and it is one which we think would very likely have been reached but for the erroneous instruction. Although the question was one for the jury it cannot be doubted that the contention of the defendant that the business belonged to the partnership had strong support in the evidence, and if it did the controversy was one for the civil courts, where it no doubt would have re-

mained had not Haight been in doubt as to the collectibility of a judgment.

The judgment and order are reversed.

Wood (Parker), J., and Vallée, J., concurred.